IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| BRIAN ALFARO, § | |
| § | |
| Movant-Defendant, § | |
| § | |
| VS. § | CIVIL ACTION NO. SA-23-CV-1425-FB |
| § | [Criminal Case No. SA-18-CR-879-FB-1] |
| UNITED STATES OF AMERICA, § | |
| § | |
| Respondent-Plaintiff. § | |

**MEMORANDUM OPINION AND ORDER**

The Court has considered Movant Brian Alfaro's ("Movant") Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2254 ("Motion") (ECF Nos. 354, 262),[1] Respondent United States of America's ("the Government") Response (ECF No. 257), and Movant's Reply (ECF No. 254). The Court denies the Motion for the following reason.

**BACKGROUND AND PROCEDURAL HISTORY**

Movant is a 55-year-old inmate at the Federal Correctional Institution in Texarkana, Texas. *See* Bureau of Prisons, Find an Inmate, Inmate Locator (bop.gov) (search for Reg. No. 21287-480, last visited Apr. 29, 2024). His projected release date is January 8, 2027. *Id*.

Movant owned and controlled San Antonio based Primera Energy, LLC ("Primera"), Alfaro Oil and Gas, LLC ("Alfaro Oil"), and Alfaro Energy, LLC ("Alfaro Energy"). (ECF No. 113). At one time, he held licenses to sell securities and used his companies to solicit investors for oil and gas ventures. *Id*. But during 2011 and 2012, he was sanctioned by the Financial Industry Regulatory Authority ("FINRA") and eventually barred from FINRA membership due

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in SA-18-CR-00879-FB-1. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

to multiple violations of securities laws. *Id*. And in 2012, he was found liable for fraud in connection with the sale of oil and gas investments by the Texas Securities Board. *Id*.

Despite these setbacks, Movant continued to offer investors the opportunity to own shares—which he sold as "units" of working interest—in various oil and gas prospects through Primera. *United States v. Alfaro*, 30 F.4th 514, 517 (5th Cir. 2022). He made material, false representations to the investors in order to induce them into buying the units—and then fraudulently misused their funds to support his extravagant way of life. *Id*. As a result, he was charged with eight counts of mail fraud, in violation of 18 U.S.C. § 1341. (ECF No. 28). His alleged scheme to defraud was detailed in the "manner and means" portion of the Superseding Indictment:

> 1. Defendant Brian Alfaro … did make certain material false representations to investors to induce investment contributions to Primera's oil and gas drilling prospects[.]
>
> 2. Defendant Brian Alfaro … did falsely and materially represent to investors that Primera would use investor funds for well drilling and testing costs, completion and equipping costs, lease acquisition, geological, and geophysical expenses, and a fixed management fee.
>
> 3. Defendant Brian Alfaro … did not properly pay Primera's well drilling and completion vendors with investor funds.
>
> 4. Instead, defendant Brian Alfaro … did fraudulently misuse investor funds by transferring money to Brian Alfaro through, or into, financial accounts and entities Brian Alfaro controlled.
>
> 5. Defendant Brian Alfaro … did fraudulently use these transferred investor funds to support his extravagant lifestyle.
>
> 6. Defendant Brian Alfaro … did falsely and materially represent to investors that Primera would not pay transaction-based compensation[2] to its officers and employees who procured investor funds by selling "units."

---

2  *See Cornhusker Energy Lexington, LLC v. Prospect St. Ventures*, No. 8:04CV586, 2006 WL 2620985, at *6 (D. Neb. Sept. 12, 2006) ("Transaction-based compensation, or commissions are one of the hallmarks of being a broker-dealer. The underlying concern has been that transaction-based compensation represents a potential incentive for abusive sales practices that registration is intended to regulate and prevent.") (citation omitted).

> 7. However, defendant Brian Alfaro actually … did fraudulently pay to himself and others, transaction-based compensation for the sale of such "units."
>
> 8. In the ordinary course of business, Primera … did mail to potential investors, by Federal Express, Confidential Private Placement Memoranda accompanied by return Federal Express envelopes to allow investors to mail their checks to Primera.
>
> 9. Investors … did mail their investment checks to Primera in San Antonio, Texas.

(ECF No. 28 at 3–4). Following an eight-day trial, Movant was convicted by a jury on seven of the eight counts. *Alfaro*, 30 F. 4th at 517.

The Court determined that the investors' total loss of $9,922,428.63 merited a 20-level upward adjustment to Movant's sentence. *Id.* at 518. It also found that Movant's conduct justified upward adjustments because it: (1) caused a substantial financial hardship to five or more victims, (2) involved a sophisticated means, and (3) relied on a position of trust or used a special skill which significantly facilitated the commission or concealment of the offense. *Id.* It concluded that, with a criminal history category of I and a total offense level of 32, Movant's Sentencing Guidelines range was 121 months to 151 months' imprisonment. *Id.* It imposed a sentence of 121 months' imprisonment and ordered restitution in the amount of $9,922,428.63. *Id.*

On appeal, Movant argued the Court erred in its: (1) loss calculation; (2) application of the adjustment for causing substantial financial hardship to five or more victims; (3) application of the adjustment for conduct involving sophisticated means; and (4) calculation of the restitution award. *Id.*

The Fifth Circuit Court of Appeals vacated the judgment and remanded the case for resentencing based on the Court's erroneous assessment of the total monetary loss to the

investors as a result of Movant's scheme. *Id*. at 521. It found that the correct monetary loss was $9,429,599.73. *Id*. at 520. But it affirmed the Court's judgment in all other respects and remanded the case only for resentencing in accordance with its decision. *Id*. at 522.

The Court resentenced Movant to 97 months' confinement on each count of conviction, to run concurrently, and to pay restitution in the amount of $9,018,527.71. (ECF No. 245). The Court subsequently amended the judgment to increase the amount of restitution to $9,026,358.92. (ECF No. 250).

In his instant Motion, Movant asserts three claims for relief based on the Supreme Court's recent holding in *Ciminelli v. United States*, 598 U.S. 306 (2023). (ECF No. 261 at 2). He explains the *Ciminelli* Court held the "right to control" theory of fraud—where a defendant is guilty of wire fraud if he schemes to deprive the victim of an intangible asset like the information necessary to make a discretionary economic decision—is not a valid basis for liability under the federal wire fraud statute. *Id.* at 1–2. He maintains that in his case, "the intangible asset is the 'timing' of [his] taking earned profits of approximately $85,000 from 7 withdrawals." *Id.* at 8. In his first claim he complains that he was convicted on seven counts of fraudulently misusing investor funds by transferring money totaling $85,000 from Primera Energy into financial accounts he controlled—what he describes as "transaction-based compensation"—but he was held responsible at sentencing and ordered to pay restitution for an additional 293 company transactions.³ (ECF No. 254 at 4). He argues that the Court erred by adding time to his sentence and ordering him to pay restitution based on anything beyond the

---

3 *But see Alfaro*, 30 F.4th at 519 ("Alfaro has not shown that the district court erred by failing to make a materiality finding as to each specific investor before including that investor as a victim for purposes of the loss calculation. Furthermore, to the extent that Alfaro challenges the district court's use of an extrapolation methodology in the loss calculation, we have affirmed that method to calculate loss amounts in other fraud cases.") (citing *United States v. Fairley*, 880 F.3d 198, 215-16 (5th Cir. 2018); *United States v. Johnson*, 841 F.3d 299, 303-05 (5th Cir. 2016)).

loss due to the seven specific transactions identified in the Indictment. *Id.* Moreover, he claims that the other 293 transactions involved intangible assets and did not meet the standard for criminal fraud established by the Supreme Court in *Ciminelli*. *Id.* In his second claim he contends that the Court erred when it failed to instruct the jury on the "property/money standard requirement for criminal fraud" explained in *Ciminelli*. *Id*. at 5. In his final claim he maintains that the Court erred when it provided misleading instructions after the jurors asked for a "clarification of transaction-based compensation" during their deliberations. *Id.* at 7.  He asks the Court for "[a] reduction in sentence and restitution for anything beyond the convicted 7 transaction-based compensation [charges] totaling approximately $85,000." *Id*. at 12. He also asks the Court for an evidentiary hearing. (ECF No. 261 at 19).

## STANDARD OF REVIEW

A § 2255 motion is subject to a one-year limitations period. 28 U.S.C. § 2255(f). A federal prisoner must file his motion within one year from the date on which (1) the judgment became final; (2) the government-created impediment to filing the motion was removed; (3) the United States Supreme Court initially recognized, and made retroactively applicable to cases on collateral review, the legal predicate for the motion; or (4) the movant could have discovered, through due diligence, the factual predicate for the motion.  *Id.*

The one-year limitations period is not jurisdictional and is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010).  But equitable tolling is not available for "'garden variety claims of excusable neglect.'" *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (quoting *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). It "is permitted only 'in rare and exceptional circumstances.'" *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002)

(quoting *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998)). Such circumstances include situations in which a movant is actively misled by the respondent "'or is prevented in some extraordinary way from asserting his rights.'" *Id.* (quoting *Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999)). Further, "'[e]quity is not intended for those who sleep on their rights.'" *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) (quoting *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989)). Rather, "'[e]quitable tolling is appropriate where, despite all due diligence, a plaintiff is unable to discover essential information bearing on the existence of his claim.'" *Id.* at 715 n.14 (quoting *Pacheco v. Rice*, 966 F.2d 904, 906–07 (5th Cir. 1992)). Moreover, a movant has the burden of proving that he is entitled to equitable tolling. *Phillips v. Donnelly*, 216 F.3d 508, 511 (5th Cir. 2000). To satisfy his burden, he must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of timely filing a § 2255 motion. *Lawrence v. Florida*, 549 U.S. 327, 336 (2007). Finally, "[t]he decision to invoke equitable tolling is left to the discretion of the district court" and reviewed only for an abuse of discretion. *Cousin*, 310 F.3d at 848.

## ANALYSIS

In most cases, § 2255's limitations period begins when a judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 524 (2003). A judgment becomes final when the applicable period for seeking direct review expires. *Clay*, 537 U.S. 522 at 525; *United States v. Gamble*, 208 F.3d 536, 536–37 (5th Cir. 2000) (per curiam).

Movant was re-sentenced on June 30, 2022. (ECF No. 245). He did not initiate a second direct appeal. While his judgment was amended to increase the amount of restitution on May 11, 2023, "[t]he plain language of 18 U.S.C. § 3582(b) establishes that a modification of a

6

sentence does not affect the finality of a criminal judgment.'" *United States v. Olvera*, 775 F.3d 726, 729 (5th Cir. 2015) (quoting *United States v. Sanders*, 247 F.3d 139, 143 (4th Cir. 2001)). So, Movant's conviction became final on July 14, 2022, the last day on which he could have filed a timely appeal. FED. R. APP. P. 4(b)(1)(A); *United States v. Johnson*, 457 U.S. 537, 542 n.8 (1982). His time for filing a § 2255 motion within one year after his conviction became final therefore expired on July 14, 2023. Consequently, Movant's one-year limitation period passed before he arranged to have his Motion filed with the District Clerk on November 1, 2023. (ECF No. 254).

Movant does not assert that his Motion was timely because a government-created impediment prevented him from filing it, or that he recently discovered the factual predicate for his Motion through the exercise of due diligence. 28 U.S.C. § 2255(f)(2), (4). He does suggest, however, that the Supreme Court initially recognized the legal predicate for his Motion in *Ciminelli* on May 11, 2023, and made it retroactively applicable to all cases on collateral review. *Id.* § 2255(f)(2), (4); (ECF No. 254 at 11).

"Mail fraud under 18 U.S.C. § 1341 has three elements: '(1) a scheme to defraud; (2) use of the mails to execute that scheme; and (3) the specific intent to defraud.'" *United States v. Evans*, 892 F.3d 692, 711 (5th Cir. 2018) (quoting *United States v. Lucas*, 516 F.3d 316, 339 (5th Cir. 2008)). "'Scheme to defraud' is tricky to define, 'but it includes any false or fraudulent pretenses or representations intended to deceive others in order to obtain something of value, such as money, from the [entity] to be deceived.'" *Id.*, 892 F.3d at 711–12 (alteration in original) (quoting *United States v. Saks*, 964 F.2d 1514, 1518 (5th Cir. 1992)).

Prior to the Supreme Court's 2023 decision in *Ciminelli*, the Second Circuit—not the Fifth Circuit—had adopted a "right to control" theory of fraud. Relying on this theory, the Government could prove a defendant engaged in a "scheme to defraud" a victim of "money or property" by showing that the scheme denied "the victim the right to control its assets by depriving it of information necessary to make discretionary economic decisions." *United States v. Binday*, 804 F.3d 558, 570 (2d Cir. 2015), *abrogated by Ciminelli*, 598 U.S. at 306. In *Ciminelli*, the Supreme Court concluded the right to control theory was not viable under the wire fraud statute, 18 U.S.C. § 1343.[4] *Ciminelli*, 598 U.S. at 309. It reasoned the federal fraud statutes are "limited in scope to the protection of property rights." *Ciminelli*, 598 U.S. at 314. And "the so-called right to control [was] not an interest that had long been recognized as property when the wire fraud statute was enacted." *Id*. at 313. In other words, the Court limited the scope of the fraud statute by holding that it does not cover fraudulent schemes whose object is to harm a victim's intangible right to have accurate information—only fraudulent schemes to obtain property of value, such as money.

A Supreme Court decision which "announces a new rule" may apply retroactively to a case on collateral review "if the result was not *dictated* by precedent existing at the time when defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989) (emphasis in original). But such a "new rule" applies only if the rule (1) "places certain kinds of private, primary individual conduct beyond the power of the criminal law authority to proscribe" or (2) is a "watershed" rule of criminal procedure. *Id*. at 311 (citation omitted). Since the Supreme Court

---

[4] "To establish a violation of [18 U.S.C. § 1343], the Government must prove: '(1) a scheme to defraud exists, (2) the defendant used wire communications in interstate or foreign commerce to further that scheme, and (3) the defendant had specific intent to defraud.'" *United States v. Davis*, 53 F.4th 833, 842 (5th Cir. 2022), *cert. denied*, 144 S. Ct. 72 (2023) (quoting *United States v. del Carpio Frescas*, 932 F.3d 324, 329 (5th Cir. 2019)).

invalidating the right-to-control theory in *Ciminelli*, the holding may therefore serve as a basis for habeas relief for a defendant convicted under this theory as it places certain kinds of conduct beyond the power of the criminal law to proscribe.

Movant was not, however, convicted on a right-to-control theory. Quite the contrary, his scheme to defraud involved inducing investors—through fraudulent representations and with the intent to defraud—to mail money in the form of checks to his place of business and then he would convert the money to his own use. (ECF No. 28 at 3–4). Moreover, he obtained money by false pretenses from *all* 425 identified investors by telling them that Primera would only use their investments for lease acquisitions, geological and geophysical expenses, well drilling and testing, completion and equipping, and a fixed management fee—not for transaction-based compensation or commissions. *Alfaro*, 30 F.4th at 519. Then he fraudulently paid himself transaction-based compensation or commissions for the sales. The actual loss and the restitution amount, as determined by the Fifth Circuit in Movant's appeal, was based on money actually taken from all the investors—not some intangible right to have accurate information. Indeed, "[t]he record indicates that *all* the investors in Primera's wells … lost their initial investments and ownership interests." *Id.* (emphasis added). Consequently, the evidence at trial established that Movant used the mail to execute a scheme with the specific intent to defraud others of their money.

So, the *Ciminelli* case deals with intangible property—information—while Movant's case deals with tangible property—money. *Ciminelli* is not applicable, and Movant's Motion is untimely, unless equitable tolling applies.

To qualify for equitable tolling, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006) (per curiam) (citation omitted).  Movant's three claims rely entirely on the Supreme Court's holding in *Ciminelli*—and the holding in *Ciminelli* is simply not applicable to his case. Even under the most liberal construction, Movant's pleadings do not suggest that "rare and exceptional circumstances" prevented him from submitting a § 2255 motion which raised other claims for relief within the one-year limitations period. His extended period of inactivity clearly indicates a lack of due diligence. *See Fisher*, 174 F.3d at 715 ("[E]quity is not intended for those who sleep on their rights."). He has simply not pursued the habeas "process with diligence and alacrity." *Phillips*, 216 F.3d at 511 (5th Cir. 2000). Moreover, Movant has not identified any external factors beyond his control in his motion which caused his delay. As a result, Movant does not show in his motion "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" of timely filing a § 2255 motion. *Lawrence*, 549 U.S. at 336. He is not entitled to equitable tolling.

## EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if the motion,  files, and records of the case conclusively show that the defendant is not entitled to relief. *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (holding that there was no abuse of discretion in denying a § 2255 motion without a hearing where the movant's assertions of ineffective assistance were wholly conclusory in nature and refuted by reference to the record itself). The record in this case is adequate to dispose fully and fairly of Movant's claims. The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A movant may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). He may not receive a certificate of appealability unless he "has made a substantial showing of the denial of a constitutional right." *Id*. § 2253(c)(2). He "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" when district court rejects his constitutional claims on the merits. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to a certificate of appealability determination in the context of § 2255 proceedings). He must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling" when district court rejects his claims solely on procedural grounds. *Slack*, 529 U.S. at 484.

The Court will not issue a certificate of appealability because reasonable jurists could not debate the Court's reasoning for denying Movant's claims as untimely. *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484).

## CONCLUSIONS AND ORDERS

The Court concludes that Movant's claims are time-barred and that he is not entitled to equitable tolling. The Court further concludes that Movant is not entitled to a hearing or a certificate of appealability. Accordingly, the Court enters the following orders:

**IT IS ORDERED** that Movant Brian Alfaro's request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that Movant Brian Alfaro's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody," as amended (ECF Nos. 254, 262), is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Movant Brian Alfaro is **DENIED** a **CERTIFICATE OF APPEALABILITY**.

**IT IS FURTHER ORDERED** that Movant Brian Alfaro's "Motion for Discovery" (ECF No. 236) is **DENIED AS MOOT**, and any additional motions pending, if any, are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

It is so ORDERED.

SIGNED this 14th day of May, 2024.

_____
FRED BIERY
UNITED STATES DISTRICT JUDGE